```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/7/2014
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NO HERO ENTERPRISES B.V.,

        Plaintiff,

    -against-

LORETTA HOWARD GALLERY INC.,
LORETTA HOWARD HOLDINGS, INC.,
LORETTA HOWARD, individually, PAUL
KASMIN GALLERY, INC., and 513 WEST 26TH
REALTY, LLC,

        Defendants.
------------------------------------------------------------X
LORETTA HOWARD GALLERY INC.,

        Third-Party Plaintiff,

    -against-

AXA ART INSURANCE CORPORATION,

        Third-Party Defendant.
------------------------------------------------------------X

13 Civ. 8464 (GHW)

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, District Judge:

A valuable painting by the famous American abstract painter, Frank Stella, was damaged while being transported by the Loretta Howard Gallery Inc. (the "Howard Gallery"). The painting's insurer, AXA Art Insurance Corporation ("AXA"), claims that the two-year statute of limitations period contained in its policy shelters it from liability in this action. Because the language of the policy is not clear enough to avoid long-established principles of interpretation under New York law, the Court denies AXA's motion to dismiss.

I.     **Background**[1]

---

[1] The following facts are derived from the allegations in the Howard Gallery's third-party complaint, the parties' insurance contract, and the amended complaint filed by the plaintiff in this action. Although the latter documents are

In June 2011, the Howard Gallery and AXA executed an insurance contract pursuant to which AXA agreed to insure certain property in the Howard Gallery's possession (the "Policy"). Third-Party Complaint ("TPC") at ¶ 7. The Policy provided, in relevant part, that the Howard Gallery may not "bring a legal action against [AXA] under this coverage unless . . . the action is brought within two years after [the Howard Gallery] first [has] knowledge of the 'loss.'" Declaration of Ronald W. Adelman in Support of Motion to Dismiss ("Adelman Decl."), Ex. B (Policy) at 8. The Policy further provided that "'Loss' means accidental loss or damage." *Id.* at 9.

Among other property, the Policy covered a valuable Frank Stella painting entitled "WLID," which had been consigned to the Howard Gallery by the plaintiff in this action, No Hero Enterprises B.V. ("No Hero"). *See* TPC at ¶ 7; No Hero Amended Complaint at ¶ 2. On or about September 6, 2011, the painting was badly damaged in transport from the Howard Gallery to the Paul Kasmin Gallery. No Hero Amended Complaint at ¶ 17-18. The Howard Gallery promptly filed a claim for the damage to the painting under the Policy. TPC at ¶ 8. AXA denied the claim on February 16, 2012.[2] *Id.* at ¶ 9. According to the Howard Gallery, AXA's denial of the claim constituted a breach of the Policy. *Id.* at ¶ 20.

## II.  Procedural History

In November 2013, No Hero sued the Howard Gallery and AXA, among other defendants, in connection with the damage to the painting. On January 10, 2014, the Howard Gallery answered the complaint and raised a breach of contract cross-claim against AXA. No Hero subsequently withdrew its claims against AXA and filed an amended complaint, and the Howard Gallery filed a

---

neither attached to the third-party complaint nor explicitly incorporated by reference, the Court may consider them in ruling on the motion to dismiss because the third-party complaint "relies heavily upon [their] terms and effect." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted).

[2] The Howard Gallery alleges that AXA subsequently "held open the possibility that it would provide coverage to [the Howard Gallery] as a result of damage to the Painting." TPC at ¶ 10. For the reasons set forth in the Analysis Section, however, the Court is not required to consider this allegation or other allegations related to the doctrine of equitable estoppel in reaching its decision.

third-party complaint against AXA. AXA now moves to dismiss the third-party complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

AXA argues that the Howard Gallery's claim is time-barred under the Policy's two-year limitations period, which began to run when the Howard Gallery first had knowledge of the "loss." AXA asserts that the date of the "loss" that begins the limitations period is the date on which the painting was damaged. Specifically, according to AXA, by defining the term "loss" as "accidental loss or damage," the parties contracted out of the default rule under New York law that a limitations period in an insurance contract begins to run on the date on which a cause of action accrues, and instead tied the start of the limitations period to the date of the accident giving rise to the insurance claim. Since the Howard Gallery had immediate knowledge of the September 6, 2011 accident that damaged the painting, but did not bring legal action against AXA until January 10, 2014—more than two years later—AXA argues that this claim is time-barred.

AXA also argues that "there was never coverage under the Policy for the damage to the [painting] as a result of the inherently dangerous and unlawful method in which it was being transported." Memorandum of Law in Support of Motion to Dismiss at 10 (capitalization omitted). As factual support for this argument, AXA relies primarily on a September 2011 email from an employee of the Howard Gallery stating that two art handlers carried the painting on the roof of an elevator car in attempting to transport it from the Howard Gallery to the Paul Kasmin Gallery, and that the painting was crushed when the elevator ascended instead of descending. *See* Adelman Decl., Ex. C.

In opposing AXA's motion, the Howard Gallery argues that the Policy's definition of the term "loss" is not sufficiently specific to override the default rule that the limitations period begins to run when a cause of action accrues. According to the Howard Gallery, its cause of action against AXA did not accrue until AXA denied the insurance claim at issue on February 16, 2012, and it

3

timely raised that cause of action within the two-year period following that date.[3] In any event, the Howard Gallery argues that AXA should be estopped from raising a contractual limitations defense as a result of taking various actions that lulled the Howard Gallery into inactivity after denying the insurance claim. Finally, the Howard Gallery argues that the manner in which the painting was damaged does not preclude coverage under the Policy.

### III. Analysis

#### A. Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 137 (2d Cir. 2013). Additionally, the Court may consider "only the complaint and any documents attached thereto or incorporated by reference and documents upon which the complaint relies heavily." *Building Industry Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 187 (2d Cir. 2012) (internal quotation marks omitted). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

#### B. Timeliness

Under New York law, which governs this dispute, breach of contract claims are generally subject to a six-year statute of limitations. *See* N.Y. C.P.L.R. § 213(2). However, "an agreement which modifies the Statute of Limitations by specifying a shorter, but reasonable, period within which to commence an action is enforceable, . . . provided it is in writing." *John J. Kassner & Co., Inc.*

---

[3] Although the Howard Gallery specifically asserts that it raised its breach of contract claim on November 13, 2013, that date has no apparent significance in this case. The instant action was not commenced by No Hero until November 26, 2013, and, moreover, the Howard Gallery did not raise any claims against AXA until filing its answer with cross-claims on January 10, 2014. This issue, however, does not affect the result in this case.

*v. City of New York*, 46 N.Y.2d 544, 551 (1979) (citing N.Y. C.P.L.R. § 201). New York courts have consistently upheld two-year limitations periods in insurance contracts as reasonable. *See Pfeffer v. Harleysville Group, Inc.* No. 10-cv-1619 (ALC), 2011 WL 6132693, at *7 (E.D.N.Y. Sept. 30, 2011) (collecting cases).

In *Fabozzi v. Lexington Ins. Co.*, the Second Circuit held that, under New York law, "generic language setting a contractual limitations period should be interpreted to start the clock not at the time of the accident itself but only once 'the right to bring an action exists'—that is, once all conditions precedent have been met." 601 F.3d 88, 91 (2d Cir. 2010) (quoting *Steen v. Niagara Fire Ins. Co.*, 89 N.Y. 315, 322-23 (1882)). As an example of such "generic language," the Court cited a policy provision that required an action to be brought within a certain period after the date of the "loss or damage." *Id.* (citing *Margulies v. Quaker City Fire & Marine Ins. Co.*, 97 N.Y.S.2d 100, 103-04 (1950)); *see also Steen*, 89 N.Y. at 321-22 (interpreting language that required suit be brought within a "term of twelve months next after the loss or damage shall occur" as referring to the date on which the cause of action accrued, not the date of the fire that caused the loss).

The Second Circuit recognized, however, that parties could contract out of this default rule and agree to start the limitations period on the date of the accident by using "exceptionally clear" or "highly specific" language. *Fabozzi*, 601 F.3d at 91-92. The Second Circuit cited two examples of policies containing such language: (1) a policy that required an action to be brought within a certain period after the "inception of the loss" (a phrase that the Second Circuit described as a "term of art"), *id.* at 91 (citing *Proc v. Home Ins. Co.*, 270 N.Y.S.2d 412 (1966)); and (2) a policy that required an action to be brought within a certain period "after the date on which the direct physical loss or damage occurred," *id.* at 92 (citing *Myers, Smith & Granady, Inc. v. N.Y. Prop. Ins. Underwriting Ass'n*, 623 N.Y.S.2d 840 (1995)).

5

Here, the Policy required the Howard Gallery to file an action "within two years after [it] first [had] knowledge of the 'loss,'" where "Loss" was defined as "accidental loss or damage." Adelman Decl., Ex. B at 8-9. As the Second Circuit made clear in *Fabozzi*, a reference to the date of "loss or damage," without more, is understood to refer to the date of accrual of the cause of action, not the date on which the physical damage occurred. The question here, then, is whether or not AXA's addition of the word "accidental" before "loss or damage" in the Policy's definition of "Loss" is sufficiently specific or clear to change that default rule. The Court holds that it is not.

AXA asserts that the defined term "Loss" should be read as a reference to the accident itself—the incidence of physical damage for which coverage is sought. AXA asks the Court to find that the words "accidental loss or damage" are clearly equivalent in meaning to terms such as "the date on which the direct physical loss or damage occurred" or "the inception of the loss," as discussed by the Second Circuit in *Fabozzi*—phrases that directly refer to the physical event that gave rise to the claimed damages. However, the addition of the word "accidental" does not unambiguously change the meaning of the words that follow it in the way that AXA claims.

"Accidental" means "[n]ot having occurred as a result of anyone's purposeful act." BLACK'S LAW DICTIONARY (9th ed. 2009). "Accidental loss or damage," therefore, can reasonably be read to refer to the category of losses or damages that happen by accident—as compared to purposeful or intentional damages—not to the accident itself.[4] The addition of the word "accidental" can be read to limit the scope of "Loss" covered under the Policy to damages caused by accident, as compared to damages purposefully inflicted on the covered property. In any event, the Court need not decide that this is the proper reading of the defined term at issue in the Policy. All that the Court is

---

[4] In the same way, an "accidental meeting" refers to a type of meeting, one that happened by accident, not the date on which the meeting occurred; "accidental death" refers to the circumstances of death, one occasioned by accident, not the inception of death.

6

required to find is that the term is not a sufficiently clear and unambiguous reference to the accident itself. It is not.

In support of this conclusion, the Court points to the fact that the Policy uses the single defined term "Loss" (*i.e.*, "accidental loss or damage") to convey a number of meanings. Many of the uses of the term in the Policy cannot be reasonably construed to refer to the occurrence of the event that gave rise to an insurance claim. *See, e.g.*, Adelman Decl., Ex. B at 6 ("If we and you disagree on the value of the property or the amount of 'loss', either may make written demand for an appraisal of the 'loss'. . . . The appraisers will state separately the value of the property and amount of 'loss'."); *id.* at 7 ("In case of an item which is part of a pair or set, the measure of 'loss' shall be a reasonable and fair proportion of the total value of the pair or set . . . ."); *id.* ("The Limit of Insurance will not be reduced by the payment of any claim, except for total 'loss' of a scheduled item, in which event we will refund the unearned premium on that item."). As used in the provisions cited above (and many others), the term "loss" is most reasonably construed to refer to the amount by which covered property decreased in value as a result of the accident giving rise to a claim or the amount of the claim itself. Although there may also be instances in which the term "loss" could be reasonably construed to refer to the accident itself, the fact that there is more than one reasonable construction of this term as used in the Policy warrants adopting a construction against AXA. *See Matter of Mostow v. State Farm Ins. Cos.*, 88 N.Y.2d 321, 326 (1996) ("[O]ur precedent establishes that ambiguities in an insurance policy should be construed in favor of the insured and against the insurer, the drafter of the policy language . . . ."); *see also Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt.*, 692 F.3d 42, 53 (2d Cir. 2012) ("[A]mbiguity exists where a contract term could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular

7

trade or business." (citations and internal quotation marks omitted)); *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London, England*, 136 F.3d 82, 86 (2d Cir. 1998) ("Ambiguity with respect to the meaning of contract terms can arise either from the language itself or from inferences that can be drawn from this language."). The defined term "loss" is used in the Policy in a way that suggests more than one meaning; it is not sufficiently unambiguous to overcome New York's long-established default rule.

The fact that the Policy's contractual limitation period begins on the date on which the insured first had "knowledge of the 'loss'" does not affect this conclusion. The phrase as a whole can reasonably be read to refer to the date when the insured first had knowledge of the accrual of the claim under the Policy, instead of the date when the insured first had knowledge of the accident itself. The reference to the insured's "knowledge" does not cure the ambiguity of the defined term "loss" as used in this case.

If AXA had wished to define the term "loss" so as to unambiguously refer to the accident insured against, it could have easily done so. *See, e.g., Fabozzi*, 601 F.3d at 91 (noting that, since as early as 1943, New York courts have regarded the phrase "inception of the loss" as a term of art referring to the accident insured against). Alternatively, AXA could have used the flexible defined term "loss" throughout the Policy and drafted the contractual limitations clause to begin on the date that the policy holder "first had knowledge of the *inception of* the 'loss.'" It did not. The Court must construe ambiguous language in favor of the insured. *See Matter of Mostow*, 88 N.Y.2d at 326.

Accordingly, the Court finds that the Policy's definition of the term "loss" is not sufficiently clear to override New York's default rule, which ties the start of the Policy's two-year limitations period to the accrual of a cause of action. The Howard Gallery's breach of contract cause of action accrued, at the earliest, when AXA denied the Howard Gallery's insurance claim for damage to the

painting on February 16, 2012, and the Howard Gallery timely raised this cause of action as a cross-claim in its January 10, 2014 answer to the original complaint.[5]

### C. Scope of Coverage

As factual support for its argument that the Policy does not cover the damage to the painting in light of the "inherently dangerous and unlawful" manner in which that damage was incurred, AXA relies almost entirely on a copy of a September 2011 email attached as an exhibit to its motion to dismiss. Presumably, this is because neither the Howard Gallery's third-party complaint nor No Hero's complaint describes the specific manner in which the painting was damaged. Neither party has argued that the Howard Gallery's third-party complaint "relies heavily" on the above email, and the Court finds that there is no basis to consider it in ruling on the instant motion to dismiss. *See Building Industry Elec. Contractors Ass'n*, 678 F.3d at 187; *see also Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000) ("[A] district court errs when it consider[s] affidavits and exhibits submitted by defendants or relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss. Vacatur is required even where the court's ruling simply mak[es] a connection not established by the complaint alone or contains an unexplained reference that raises the possibility that it improperly relied on matters outside the pleading in granting the defendant's Rule 12(b) motion." (citations and internal quotation marks omitted)).

To be sure, the contents of the above September 2011 email are summarized in AXA's letter denying the Howard Gallery's insurance claim, which AXA has also attached as an exhibit to its motion to dismiss. *See* Adelman Decl., Ex. D. Nonetheless, even if AXA's letter is sufficiently integral to the third-party complaint to permit its consideration, the Court declines to base its decision as to whether the Howard Gallery has stated a claim on a summary of an email contained in

---

[5] In light of the above analysis, the Court is not required to address the Howard Gallery's argument that AXA should be equitably estopped from raising a contractual limitations defense.

an exhibit attached to the motion to dismiss. Furthermore, in responding to the argument at issue, the Howard Gallery relies in part on an affirmation drafted by defendant Loretta Howard, which it has attached as an exhibit to its opposition papers. The prudent course of action under these circumstances is to defer consideration of this issue to a more appropriate stage of the case. Accordingly, the Court rejects AXA's argument based on the purportedly dangerous manner in which the painting was transported, without prejudice to renewal in any summary judgment motion or at trial.

### III. Conclusion

For the foregoing reasons, AXA's motion to dismiss the Howard Gallery's third-party complaint is denied.

SO ORDERED.

Dated: May 7, 2014
New York, New York

GREGORY H. WOODS
United States District Judge